## Case No. 13,663.

### The SWALLOW.

[8 Ben. 223.] [1]

District Court, N. D. New York. July, 1875.

COLLISION — TUG AND TOW — INJURY CAUSED BY TOW—AGREEMENT FOR SERVICE—LIABILITY OF TOW FOR TUG'S NEGLIGENCE.

1. The schooner O., going down the St. Clair river, had anchored about two miles above the flats, just below a bend in the river. While so lying, she was struck by the schooner S., which with two other schooners was being towed down the river by the tug M. It did not appear in evidence what was the agreement under which the S. was being towed. The M. having taken hold of the vessels assumed the control of them and proceeded down the river, each vessel being manned by her own crew. The tug and the first schooner passed safely by the O., but the S. ran into her. When the collision was imminent, the master of the tug gave directions to the crews of the vessels in tow, and there was no fault in the seamanship of the crew of the S. The owner of the O. filed a libel against the S. alone to recover the damages. *Held*, that, in the absence of any proof as to the agreement for the service, or as to the usage on the river, it could not be said that the tug was under the control of the vessels constituting her tow.

2. Under the circumstances, it was negligence for the tug to attempt to pass the bend with more than one vessel in tow, and this could have been known in season to have avoided the collision.

3. The tug and not the S. was the principal in the transaction, and the S. was not liable.

In admiralty.

WALLACE, District Judge. This libel is filed by the owner of the schooner Onondaga to recover damages for a collision on the St. Clair river, and the important question is, whether the Swallow or the tug Masters, which had the Swallow in tow, is responsible for the damages.

Owing to a jam of boats, which had occurred on the river at "the flats," the Onondaga was unable to proceed down the river, and cast anchor about two miles above the flats and a short distance below a bend in the river. Subsequently the barge Kilderhouse cast anchor above the Onondaga. A

---

1 [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

number of other vessels and barges had cast anchor below the Onondaga, some of them quite near her, and others lay at various points between her and the flats. The Swallow, bound on a voyage from Chicago to Buffalo, was taken in tow by the tug at the entrance of the St. Clair river, to be towed through the river. Two other schooners were also taken in tow by the tug, and the tug and tow proceeded down the river, the schooner Sardinia being next the tug, and attached by cable to the latter's stern, the Swallow next, attached by cable to the Sardinia's stern, and the Preston, attached by cable to the Swallow's stern, was last. The tug and tow passed safely by the Kilderhouse, and the tug and the Sardinia also passed safely by the Onondaga, but the Swallow struck her, causing the damages for which the action is brought.

Under the circumstances, it was not practicable for a tug to pass safely below the bend of the river with more than one vessel in tow, and the proofs justify the conclusion that this was known, or could with reasonable circumspection have been known, to those in charge of the tug and of the schooner in tow, in sufficient season to have prevented the collision. Without giving the reasons for such conclusion, it suffices for present purposes to say, that were the action against the tug, I should have no difficulty in ordering a decree for the libellant. No negligence is imputed to those in charge of the Swallow in the management of their vessel, or in the prosecution of the voyage, except such as is to be implied from the fact that they knew, or should have known, that a tug with more than one vessel in tow could not safely proceed down the river below the bend when the channel was obstructed to the extent it then was by the various vessels lying at anchor. It remains, then, to ascertain, as in all cases where the question is whether a tug or vessel in tow is responsible for a collision, which of the two was the principal and which the servant. This must be determined as a question of fact, and depends upon the circumstances of the particular case. While it may be conceded that in England the tow is to be considered the principal, and while some of our own courts have followed the English rule, the weight of authority here seems opposed to any inflexible presumption upon the question. As was said in Sturgis v. Boyer, 24 How. [65 U. S.] 122, "by employing a tug to transport their vessel from one point to another, the owners of the tow do not necessarily constitute the master and crew of the tug their agents in performing the service." Upon this, as upon all other issues in the case, the burden of proof is upon the libellant. The only evidence he has offered upon it may be briefly recapitulated as follows: The Swallow, together with two other vessels, was taken in tow by the tug at the entrance of the river; the tug and each vessel of the tow was

manned by its own crew; without any consultation apparently, the tug assumed control of the vessels, and proceeded down the river, each crew upon their own vessel; they attempted to pass between the vessels lying at anchor; they passed one vessel safely, and danger of collision with the Onondaga becoming imminent, the master of the tug gave directions to the crews of the tow; and without fault in the seamanship of the Swallow's crew, she collided with the Onondaga.

Upon this evidence, in the absence of any proof as to the terms of the agreement for the service to be performed by the tug, and of any proof as to the usage upon the river in question, it cannot be said that the tug was under the control of the vessels constituting her tow. All the facts would indicate that the vessels were under the control of the tug, except that each vessel was manned by its own crew; and while that circumstance has been emphasized in some of the decided cases as important, it is not controlling here, because it is quite apparent, that all that was expected of the crews of the vessels was, that each vessel should be so navigated as to respond to the manœuvres of the tug. The co-operation between the tug and vessels of the tow seems similar in its character to that between tugs and tows composed of barges or canal-boats; in which instances it is held that the tug is to be deemed the master. The Express [Case No. 4,596]. The facts present a case analogous in all its aspects to that of Sproul v. Hemmingway, 14 Pick. 1, where a vessel on the Mississippi, manned by her own crew, while in tow of a steamer, collided with another vessel, and a recovery against the owners of the vessel was denied.

There is another view of the case which presents a cogent argument against the right of the libellant to recover against the Swallow. It would not be contended that, by the joint participation of the vessels in the towage service to be rendered by the tug, the owners of any one of the vessels constituted the masters and crews of the others of the tow their agents in the transaction; and yet, upon the proofs, a recovery could be urged against the Preston or the Sardinia with equal propriety as against the Swallow. The masters of the Preston and the Sardinia were as culpable as the master of the Swallow. The collision resulted not from any exclusive fault in the management of the Swallow, but from not dividing the tow, after the perils of the voyage, if continued jointly, became apparent. If the master of either vessel could have required the tow to be divided, those of the Sardinia and Preston could have done so as well as the master of the Swallow; for if the tug was the servant of the Swallow, it was also of the Sardinia and Preston, and, if either vessel of the tow was the principal, all of them were principals. Co-principals are liable for the act of each

-one engaged in a joint enterprise, unless the act is so exclusively that of one of them only that the other cannot be deemed to participate in it. The Swallow was not the offending thing. merely because she was the object which collided with the Onondaga (Taney. C. J. [The James Gray v. The John Fraser] 21 How. [62 U. S.] 194); if the collision was through her fault, she was; if not, she was only the passive instrument of the injury. These considerations go far to sanction the proposition. that when a tug has several vessels in tow she should be presumed to be the principal in the absence of -countervailing evidence.

The case is to be distinguished from those where both the tug and the tow are liable, as where those in charge of the respective vessels jointly participate in their control and management, and both participate in the fault which is the cause of the -collision. Such are cases where the tug is insufficiently manned or equipped for the service, and negligence can be imputed to the owners of the tow on the ground that the motive power employed by them was inadequate. In these cases the liability does not turn upon the relation of the parties, but upon the fault which caused the injury. Here, unless the Swallow was the principal, her master had no authority to require the tug to stop and divide the tow, and he was not, therefore, in fault.

These considerations lead to the conclusion that the libellant cannot recover. Accordingly it is ordered that the libel be dismissed with costs.